## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Renee Kay Martin, Parent, individually and on behalf of TRL and BRW, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| | ) | Case No. 3:22-cv-136 |
| Kelan Gourneau, Michael Slater, Evan Parisien, Joseph Kaufman, Earl Charbonneau, Nathan Gustafson, Reed Mesman, Trenton Gunville, Jayde Slater, Mitchell Slater, Andrew Saari, Jr., William Poitra, Heather Baker, and Annette Laducer, all in their individual and official capacities, and United States of America, | ) ) ) ) ) ) ) ) ) ) | **REPORT AND RECOMMNEDATION** |
| Defendants. | ) | |

Plaintiff Renee Kay Martin, proceeding pro se, alleges claims arising from the shooting death of her son by law enforcement officers.[1] Three motions to dismiss are pending. (1) Federal defendants United States of America, Federal Bureau of Investigation (FBI) Agent Reed Mesman, in his official capacity, and Bureau of Indian Affairs (BIA) Officers Kelan Gourneau, Michael Slater, Evan Parisien, Earl Charbonneau, and Heather Baker, in their official capacities, contend the court lacks subject matter jurisdiction over Martin's claims against them. (Doc. 58; Doc. 59). (2) Defendants Agent Mesman and the BIA officers, in their individual capacities, contend Martin's claims against them should not be recognized under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

---

[1] No defendant contends Martin does not have legal authority to bring claims on behalf of her son and his minor children.

Alternatively, they argue that if a <u>Bivens</u> remedy were available, they would be entitled to qualified immunity from that claim. (Doc. 63; Doc. 66). (3) City and county defendants Trenton Gunville, Nathan Gustafson, Joseph Kaufman, William Poitra, Andrew Saari, Jr., Jayde Slater, and Mitchell Slater, assert entitlement to Eleventh Amendment immunity as to claims against them in their official capacities and contend Martin has not stated a plausible claim against them in their individual capacities. (Doc. 68; Doc. 71). Martin opposed each of the three motions to dismiss. (Doc. 76). This report and recommendation addresses each of those motions and also addresses Martin's claim against Annette Laducer, a private citizen, who Martin named in her official and individual capacities.[2]

## Summary of Recommendation

The court lacks subject matter jurisdiction over any claim under the Federal Tort Claims Act (FTCA) because Martin has not exhausted the FTCA administrative process. The court lacks jurisdiction over any <u>Bivens</u> claim against the United States or the federal defendants in their official capacities because of the United States' sovereign immunity. The <u>Bivens</u> damages remedy does not extend to Martin's claims against the federal defendants in their individual capacities. Martin has failed to state a plausible claim against any city or county defendant in an individual capacity. And because Martin failed to state a plausible claim against any city or county defendant in an individual capacity, those defendants may not be held liable in their official capacities.

---

[2] The court previously granted defendant Criag Zachmeier's motion to dismiss. (Doc. 47). Zachmeier is a special agent with the North Dakota Bureau of Criminal Investigation.

For those reasons, each of the three pending motions to dismiss should be granted. Additionally, because the court does not have subject matter jurisdiction over any potential claims against Annette Laducer, any claims against her should be dismissed on the court's own motion.

## Background

Martin's complaint alleges that on August 23, 2020, law enforcement officers shot and killed her son, Brandon Richard Laducer, outside a residence on Turtle Mountain Indian Reservation in North Dakota following an incident that occurred in neighboring Bottineau County, North Dakota. After the Bottineau County incident, BIA Lieutenant Gourneau "offered to pursue a Brandon Laducer" onto the Reservation "in response to a call from unknown [law enforcement] person(s)." (Doc. 1, p. 10). Martin alleges the basis of the pursuit was active tribal warrants for the arrest of an individual named "Brandon Laducer." (Doc. 1, p. 10). However, officers learned later the arrest warrants were for a different individual, Brandon <u>Lee</u> Laducer, who is Caucasian and unrelated to Brandon Richard Laducer, an enrolled member of the Turtle Mountain Band of Chippewa Indians. Martin alleges law enforcement officers would not have pursued her son if Lieutenant Gourneau "would have taken the time to ensure he had the correct wanted suspect." <u>Id.</u> Martin asserts law enforcement officers knew Brandon <u>Lee</u> Laducer, the individual subject to the arrest warrants, did not live at the residence where her son was killed and "used the warrant as a guise to enter the Laducer homestead without cause," "without permission," and without lights, sirens, or warning. <u>Id.</u> Martin references a North Dakota Bureau of Criminal Investigation (NDBCI) report

and asserts that report states law enforcement officers "did not obtain permission from Richard Laducer"[3] to enter the homestead "until after the shooting." Id.

Martin states her son was asleep and when he awoke and exited the residence, law enforcement officers shot him several times, killing him "almost instantly." Id. She states that when NDBCI officers arrived, "they" discovered "they" had pursued the wrong individual and there were no warrants for her son's arrest. Id.

Martin also makes allegations regarding law enforcement officers' conduct following her son's shooting death. She asserts BIA officers did not disclose who reported the Bottineau County incident and neither the FBI nor the NDBCI, which investigated the shooting death of her son, "bothered to verify" any information related to the Bottineau County incident. Id. She asserts BIA officers violated BIA policy and "tribal code" by not contacting her, her son's father, or her son's children immediately following the death of her son. Id. She states that instead,

> Officer Evan Paris[ien] contacted [a] business owner in Bottineau and informed her Brandon Laducer was apprehended[.] [H]e called a second time and stated she did not have to worry anymore because he was dead. He was the officer that delivered the deadly shot to Brandon's heart. The business owner is not protected by Tribal Jurisdiction.
> Id.[4]

---

[3] Based on Martin's response to the motions to dismiss, the homestead belonged to Martin's son's grandfather, Richard Laducer. (Doc. 76, p. 6).

[4] Certain defendants infer that Martin alleges Officer Parisien told the business owner that he "delivered the deadly shot." (See Doc. 66, p. 10). While it is unclear from the complaint whether Marin alleges Officer Parisien actually told the business owner he "delivered the deadly shot," Martin's response to the motions to dismiss states Officer Parisien killed her son, "bragged about it," and "posted [online] about the experience while he was on leave" from his job. (Doc. 76, p. 5).

Martin states she, and family members, made several Freedom of Information Act (FOIA) requests but have not received responses to those requests. And she alleges when they spoke with FOIA officials in December 2021, the officials advised they had received no evidence from the BIA. Id. at 10, 12.

Martin states, in February 2021, when she met with an Assistant United States Attorney and Agent Mesman, Agent Mesman advised that law enforcement "were called to the residence because Brandon Richard Laducer's aunt[,] Annette Laducer[,] was having a mental health crisis" and the Bottineau County incident "had nothing to do with [law enforcement officers'] presence at the Laducer residence" when her son was killed. Id. at 10. But when she received the NDBCI report in April 2022, Martin learned law enforcement officers pursued the wrong individual. She states, "Brandon Richard Laducer was pursued and murdered because officers did not follow their prescribed procedures" and her son's family "need[s] answers as no one from the BIA has reached out to the family." Id. at 12.

Martin notes her son's children have struggled, in many ways, since their father's death. She requests $20,000,000 in damages and "medical relief" for her son's children.[5] Id.

---

[5] Martin alleges her claims under Bivens and 42 U.S.C. § 1983. (Doc. 1, p. 3). In her complaint, she also references "tribal jurisdictional rights and sovereignty," id. at 9, and in her response to defendants' motion to dismiss, she references the "Indian Civil Rights Act of 1968," (Doc. 76, p. 1). This report and recommendation does not address any claim Martin might be able to raise in tribal court. And there is no private cause of action in this court under the Indian Civil Rights Act, other than in the context of habeas proceedings under 25 U.S.C. § 1302. See Stanko v. Oglala Sioux Tribe, 916 F.3d 694, 697 (8th Cir. 2019); Dobbs v. Fond du Lac Rsrv. Bus. Comm., No. 19-cv-1289, 2019 WL 7882111, at *6 (D. Minn. Nov. 26, 2019), report and recommendation adopted, 2020 WL 206347 (D. Minn. Jan. 14, 2020).

**Law and Discussion**

1.     **Claims Against the United States and Official Capacity Claims Against the FBI Agent and BIA Officers**

The United States, Agent Mesman in his official capacity, and each of the BIA officers in their official capacities move to dismiss Martin's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Jurisdiction is a threshold question that must be decided at the outset of a case. Green Acres Enters., Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005) (citing Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990)). When a motion to dismiss challenges the factual basis of a court's jurisdiction, the court may consider affidavits or other documents outside the pleadings without converting the motion to one for summary judgment. Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018). In responding to a motion to dismiss, the plaintiff bears the burden of establishing subject matter jurisdiction and must prove jurisdictional facts by a preponderance of the evidence. Buckler v. United States, 919 F.3d 1038, 1044 (8th Cir. 2019); Moss, 895 F.3d at 1097.

The United States, Agent Mesman in his official capacity, and each of the BIA officers in their official capacities concede that, liberally construed, the complaint alleges a tort claim under the FTCA. (Doc. 59, p. 2). But they argue Martin did not exhaust administrative remedies and so is not entitled to relief under the FTCA. In support of that position, they submitted a declaration of Rebecca Pock, a Paralegal Specialist with the United States Department of Interior (DOI), and supporting exhibits. (Doc. 60; Doc. 60-1 to -2). Pock's declaration and the supporting exhibits demonstrate Martin submitted an administrative FTCA claim dated August 19, 2022, but the DOI rejected the submission as "invalid" and treated the claim as "never received" because it

6

was not accompanied by evidence of Martin's authority to act on behalf of the estate of Brandon Richard Laducer, as required by 28 C.F.R. § 14.2.[6] (Doc. 60-2). Pock's declaration stated the DOI received no other administrative FTCA claim by or on behalf of Brandon Richard Laducer's children or from Martin. (Doc. 60).

As a sovereign entity, the United States is immune from suit except to the extent it has waived its sovereign immunity. The FTCA functions as a limited waiver of sovereign immunity for state law claims against the federal government for harm caused by federal employees. <u>Buckler</u>, 919 F.3d at 1044. Under the FTCA, the United States is not itself viewed as a tortfeasor but may be liable for tortious acts of federal employees under circumstances where the United States would be liable if it were a private employer. <u>St. John v. United States</u>, 240 F.3d 671, 676 (8th Cir. 2001).

Prior to filing a claim in federal court, the FTCA requires presentation of an administrative claim to the "appropriate federal agency." 28 U.S.C. § 2675(a). Exhaustion of administrative remedies is a jurisdictional precondition to filing an FTCA claim in federal court. <u>Rollo-Carlson as Trustee for Flackus-Carlson v. United States</u>, 971 F.3d 768, 770 (8th Cir. 2020). Martin does not address the argument that she did not exhaust an administrative FTCA claim, and the evidence of record demonstrates she did not do so. Martin has therefore not met her burden of establishing this court's subject matter jurisdiction under the FTCA.

Nor can Martin maintain a claim against the United States, Agent Mesman in his official capacity, or any of the BIA officers in their official capacities under <u>Bivens</u>. A

---

[6] FTCA requirements include proof of legal authority to act on behalf of someone else.

claim against a federal officer in an official capacity is a claim against the United States. The United States is immune from <u>Bivens</u> suits under the doctrine of sovereign immunity, and a court is required to dismiss such claims without prejudice for lack of subject matter jurisdiction. <u>See</u> <u>Laswell v. Brown</u>, 683 F.2d 261, 268 (8th Cir. 1982); <u>Mont v. Fikes</u>, No. 21-cv-1489, 2023 WL 3766377, at *6 (D. Minn. Apr. 4, 2023), <u>report and recommendation adopted</u>, 2023 WL 4927548 (D. Minn. Aug. 2, 2023).

Because the court lacks subject matter jurisdiction over any claim under the FTCA or over any <u>Bivens</u> claim against the United States, Agent Mesman in his official capacity, and each of the BIA officers in their official capacities, the district judge should grant those defendants' motion to dismiss the complaint as to them without prejudice.

**2.     Individual Capacity Claims Against the FBI Agent and BIA Officers**

Agent Reed Mesman and each of the BIA officers in their individual capacities (collectively, federal defendants) move to dismiss Martin's claims under Federal Rule of Civil Procedure 12(b)(6), asserting Martin's claims against them should not be recognized under recent Supreme Court rulings, primarily because Martin's claims differ from <u>Bivens</u> in that they arose on tribal land. The federal defendants also contend that, if a <u>Bivens</u> claim is recognized, they are entitled to qualified immunity from that claim. Martin opposes the motion, contending she should be permitted to proceed with her claims under <u>Bivens</u> because her claims are sufficiently similar to the claims in <u>Bivens</u>.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007). To withstand a motion to dismiss, a plaintiff must plead "enough facts to state a claim to

8

relief that is plausible on its face." <u>Id.</u> at 570. "[A] formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555. In considering a motion to dismiss, a court must determine whether the facts in a complaint "plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). In other words, the pleadings must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" <u>Twombly</u>, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

In ruling on a Rule 12(b)(6) motion, the court accepts factual allegations in the complaint as true and construes them in the light most favorable to the non-moving party. <u>Bohan v. Honeywell Int'l, Inc.</u>, 366 F.3d 606, 608 (8th Cir. 2004). While facts alleged in the complaint are to be accepted as true, conclusory allegations of the elements of a cause of action are insufficient to state a claim that is plausible on its face. <u>Id.</u> In construing a pro se complaint, a court is to take a liberal approach and is to hold a pro se litigant to a less stringent pleading standard than would be required of attorneys. <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007).

Here, the court must address whether, considering recent Supreme Court precedent, Martin may bring a claim for money damages against the federal defendants for purported violations of the Fourth Amendment. Recent Supreme Court rulings have significantly restricted plaintiffs' potential claims against federal officers.

In 1971, the Supreme Court—in <u>Bivens</u>—permitted a plaintiff injured by federal agents' alleged violations of the Fourth Amendment to seek damages, despite the absence of any Congressional statute establishing that remedy. 403 U.S. at 397. Over the next nine years, the Supreme Court recognized damages remedies against federal officials for alleged constitutional violations in only two other cases—under the Fifth

Amendment against a member of Congress accused of gender discrimination, <u>Davis v. Passman</u>, 442 U.S. 228 (1979), and under the Eighth Amendment against prison officials accused of denying prisoners medical care, <u>Carlson v. Green</u>, 446 U.S. 14 (1980). The Supreme Court has never recognized an implied action for damages against a federal official to remedy a constitutional violation other than in <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>.

In 2017, the Supreme Court cautioned that extending the <u>Bivens</u> damages remedy to "any new context or new category of defendants" is a "disfavored judicial activity." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 135 (2017) (citations and internal quotation marks omitted). That is because generally Congress, and not the courts, decides when a damages remedy is available to a plaintiff who was harmed by actions of a federal agent. <u>Id.</u> at 136; <u>see also</u> <u>Egbert v. Boule</u>, 596 U.S. 482, 486 (2022) (stating "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts").

### A.     Two-Part Test to Determine if a <u>Bivens</u> Claim May Proceed

In <u>Abbasi</u>, the Supreme Court set out a two-part test to determine whether to permit a <u>Bivens</u> claim to move forward. First, the court must ask whether the claim arises in a "new context." <u>Egbert</u>, 596 U.S. at 492. If the context is <u>not</u> new, i.e., if context is like the context of <u>Bivens</u>, <u>Davis</u>, or <u>Carlson</u>, the claim for damages may proceed. But if the context <u>is</u> new, the court must consider the second part of the <u>Abbasi</u> test—whether there are "special factors" that would cause the court to hesitate to permit a plaintiff to proceed with a claim for damages against a federal employee. <u>Abbasi</u>, 582 U.S. at 136. If the court has any hesitation, a plaintiff may not proceed with the claim.

But if there are no "special factors" that would give the court pause, the claim may proceed.

> "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case—no Bivens action may lie." Egbert, 596 U.S. at 491-92 (emphasis added, citations omitted, and internal quotation marks omitted).

### B.    Conflation and Dilution of the Abbasi Two-Part Test

The term "new context" in the first step of the Abbasi test has been broadly interpreted. Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020). A "new context" is one that is "different in a meaningful way" from the contexts of Bivens, Davis, and Carlson. Abbasi, 582 U.S. at 139. The Supreme Court provided non-exclusive examples of what might be considered a meaningful difference in context:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 139-40. But some of those step-one factors are conflated with factors to be considered at step two of the test. For example, the Supreme Court stated that—at step one—a case might arise in a new context if there is a "risk of disruptive intrusion by the Judiciary into the functioning of other branches" or "the presence of potential special factors that previous Bivens cases did not consider." Id. at 140. At step two, the Supreme Court directs the court to "ask whether there are any 'special factors [that] counse[l]

hesitation.'" <u>Hernandez</u>, 140 S. Ct. at 743 (quoting <u>Abbasi</u>, 582 U.S. at 135). "'[C]entral to [the special factor] analysis' are 'separation-of-powers principals.'" <u>Id.</u> In addressing the various step-one factors, the <u>Abbasi</u> dissent aptly noted the majority conflated step one and step two of the two-part test: "In my view, these factors do not make a 'meaningful difference' at step one of the <u>Bivens</u> framework. Some of them are better cast as 'special factors' relevant to step [two]." 582 U.S. at 176 (Breyer, J., dissenting). The <u>Hernandez</u> dissent also recognized overlap between step-one factors and step-two factors:

> As differences material to a new-context determination [at step one], <u>Abbasi</u> also lists: "the risk of disruptive intrusion by the Judiciary into the functioning of other branches . . . or the presence of potential special factors that previous <u>Bivens</u> cases did not consider." These considerations overlap with the special-factors inquiry [of step two].

140 S. Ct. at 756 n.3 (Ginsburg, J., dissenting) (citation omitted). Additionally, in a concurring opinion in <u>Egbert</u>, Justice Gorsuch recognized the two-part test as difficult to apply: "What distinguishes the first step from the second? What makes a context 'new' or a factor 'special'?" 596 U.S. at 502 (Gorsuch, J., concurring).

Notably, the <u>Abbasi</u>, <u>Hernandez</u>, and <u>Egbert</u> majorities considered the risk of the judiciary's intrusion into the authority of the other branches at <u>step two</u> of the two-part test. <u>See Egbert</u>, 596 U.S. at 495-96; <u>Hernandez</u>, 140 S. Ct. at 744, 747-48; <u>Abbasi</u>, 582 U.S. at 141-43. Whether "risk of the judiciary's intrusion" is considered at step one or at step two is important because, under the two-part test, if certain factors are considered at step two rather than at step one, more cases might be permitted to proceed because the court would not consider step two's "separation-of-powers principals"—the impact on other branches of government—when determining if a claim arises in a new context.

Though the Egbert majority gave lip service to the two-part test, it diluted that framework—"While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think Congress might be better equipped [than the courts] to create a damages remedy." 596 U.S. at 492. The Egbert majority also stated, "A court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" Id. at 496 (citation omitted); see also id. at 502-03 (Gorsuch, J., concurring) ("Today, the Court helpfully answers some of these lingering questions. It recognizes that our two-step inquiry really boils down to a 'single question.'").

Considering the Egbert majority's implicit erosion of the two-part test, the Egbert minority described the majority as having gone "to extraordinary lengths to avoid" permitting the plaintiff to proceed with his Fourth Amendment claims by, in part, rewriting "a legal standard it established just five years ago." 596 U.S. at 504 (Sotomayor, J., concurring in part and dissenting in part). Justice Sotomayor described the practical effect of the majority opinion:

> The Court's innovations, taken together, enable it to close the door to [the plaintiff's] claim and, presumably, to others that fall squarely within Bivens' ambit.
>
> Today's decision does not overrule Bivens. It nevertheless contravenes precedent and will strip many more individuals who suffer injuries at the hands of other federal officers, and whose circumstances are materially indistinguishable from those in Bivens, of an important remedy. I therefore dissent from the Court's disposition of [the plaintiff's] Fourth Amendment claim. . . .
>
>         . . . .

Two Terms ago, this Court reiterated and reaffirmed [Abbasi]'s two-step test for assessing whether a claim may be brought as a Bivens action. Today, however, the Court pays lip service to the test set out in our precedents, but effectively replaces it with a new single-step inquiry designed to constrict Bivens. The Court goes so far as to announce that "[t]he Bivens inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action," instead, courts must "only" decide "whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed[.]'"

Id. at 505, 517-18 (citations and parentheticals omitted). Justice Gorsuch also

commented on the practical effect of the Egbert majority opinion:

Of course, the Court's real messages run deeper than its case-specific analysis. If the costs and benefits do not justify a new Bivens action on facts so analogous to Bivens itself, it's hard to see how they ever could. And if the only question is whether a court is "better equipped" than Congress to weigh the value of a new cause of action, surely the right answer will always be no. Doubtless, these are the lessons the Court seeks to convey. I would only take the next step and acknowledge explicitly what the Court leaves barely implicit. Sometimes, it seems, "this Court leaves a door ajar and holds out the possibility that someone, someday might walk through it" even as it devises a rule that ensures "no one . . . ever will." In fairness to future litigants and our lower court colleagues, we should not hold out that kind of false hope, and in the process invite still more "protracted litigation destined to yield nothing."

Id. at 504 (citations omitted).

Egbert's statement of there being only one question when considering whether to

permit a Bivens claim to proceed—whether Congress is better suited than the courts to

create a damages remedy—created additional confusion about the Abbasi two-step test.

See Sargeant v. Barfield, 87 F.4th 358, 364 (7th Cir. 2023) (concluding Egbert "modified

the Abbasi approach"); Silva v. United States, 45 F.4th 1134, 1139 & n.4 (10th Cir. 2022)

(stating Egbert "appeared to alter the existing two-step Bivens framework" but did not

overrule Abbasi and Hernandez); Pettibone v. Biden, No. 3:20-cv-01464-YY, 2022 WL

19521759, at *6 (D. Or. Sept. 22, 2022), report and recommendation adopted, 2023 WL

2969267 (D. Or. Apr. 17, 2023) (citing cases in which "lower courts have interpreted Egbert as collapsing the two-part test into a single 'special factors' inquiry" but also citing cases in which other courts "have concluded that the two-step analysis still applies, though Egbert requires giving more 'emphasis on the presence of special factors'").

The Eighth Circuit has not yet addressed Egbert's impact on Bivens claims. But other district courts in the Eighth Circuit have continued to apply the two-part Abbasi test. See, e.g., Mount v. Fikes, No. 21-CV-1489, 2023 WL 4927548, at *3 (D. Minn. Aug. 2, 2023); Clutts v. Lester, No. 20-CV-80-CJW-KEM, 2023 WL 3901489, at *3 (N.D. Iowa June 8, 2023). This court will take the same approach and consider Martin's Fourth Amendment claims under the two-part Abbasi test, as informed by Egbert.

### C.    Step One—New Context

Martin claims—that law enforcement officers illegally entered the Richard Laducer homestead and killed her son—arise under the Fourth Amendment. She also alleges claims arising from law enforcement officers' subsequent investigation of the shooting death of her son. Since Davis and Carlson involved wholly different claims under the Fifth and Eighth Amendments, those cases are meaningfully different from this one. Bivens, however, involved claims under the Fourth Amendment. Thus, the court focuses on whether Martin's Fourth Amendment claims are meaningfully different from the claims asserted in Bivens.[7]

---

[7] As to Martin's claims arising from law enforcement officers' investigation of the shooting death of her son, there is no question that, to the extent Martin raises such claims, those claims arise in a new context because the Supreme Court has never recognized that type of claim under Bivens.

In <u>Bivens</u>, the plaintiff alleged Federal Bureau of Narcotics agents, without a warrant, entered and searched his apartment and arrested him. 403 U.S. at 389. He also alleged the agents shackled him in front of his wife and children, threatened to arrest his entire family, and later subjected him to a strip search. <u>Id.</u> The plaintiff contended the agents violated his Fourth Amendment rights by searching his apartment and arresting him without probable cause, and by using unreasonable force during his arrest.

The federal defendants contend Martin's claims arise in a new context for several reasons: <u>Bivens</u> did not involve (1) BIA officers or FBI agents, (2) an officer involved shooting, (3) use of excessive force outside a home, or (4) claims arising on tribal land. (Doc. 66, pp. 13-14). Martin contends, "<u>Bivens</u> does apply because we argue there was an unreasonable search [and seizure] with no probable cause by law enforcement in violation of Fourth Amendment rights." (Doc. 76, p. 2). Those similarities alone, however, are not enough to permit Martin's claims to proceed. <u>See Hernandez</u>, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). Thus, the court considers the federal defendants' arguments that Martin's claims are meaningfully different from the claims raised in <u>Bivens</u>.

First, the amount of force used and where that use of force occurred do not, in this case, constitute meaningful differences.[8] <u>See Hernandez</u>, 140 S. Ct. at 744-45 (describing <u>Bivens</u> as involving "an allegedly unconstitutional arrest and search carried

---

[8] The Eighth Circuit found a meaningful difference from <u>Bivens</u> where, unlike in <u>Bivens</u>, an officer did not enter a home to make an arrest. <u>See Ahmed v. Weyker</u>, 984 F.3d 564, 568 (8th Cir. 2020). But <u>Ahmed</u> involved a Fourth Amendment "false-arrest theory"—it did not address any claim for use of excessive force. <u>Id.</u> at 566.

out in New York City" without reference the location of the arrest or the killing of a teenager as constituting a new context); <u>Snowden v. Henning</u>, 72 F.4th 237, 247 (7th Cir. 2023) (stating "hotel or home, warrant or no warrant—the claims here and in <u>Bivens</u> stem from run-of-the-mill allegations of excessive force during an arrest" and finding an agent's use of force, which was more egregious than the <u>Bivens</u> agents' use of force, not a meaningful difference from that involved in <u>Bivens</u>). The district judge should therefore conclude that the killing of an individual outside a home is not meaningfully different from <u>Bivens</u> such that Martin's claims arise in a new context.

Next, since <u>Abbasi</u> was decided, circuit courts have arguably disagreed on what constitutes a different category of defendants. <u>See</u> <u>Longtail v. LaRocque</u>, No. 3:22-cv-111, Doc. 39 (D.N.D. Feb. 23, 2023) (report and recommendation pending). That aside, the district judge need not determine whether BIA officers or FBI agents are different categories of defendants from the <u>Bivens</u> agents, which might render Martin's claims as having arisen in a new context, since Martin's claims are meaningfully different from the <u>Bivens</u> claims because they arose on tribal land, as discussed below.

The federal defendants further argue that because Martin's claims arose on tribal land, her claims implicate "unique issues of federal jurisdiction and sovereignty"—"special factors" under step one of the two-part test that courts have "not previously considered." (Doc. 66, p. 13). The federal defendants are correct. The Supreme Court has not addressed any <u>Bivens</u> claim arising on tribal land. Considering Martin's claims arose on tribal land, the overlap between the step-one and step-two special factor considerations, and <u>Egbert</u>'s implicit modification of the two-part test, this court

recommends the district judge conclude Martin's claims are meaningfully different from the <u>Bivens</u> claims because they arose on tribal land.[9]

### D.    Step-Two Special Factors

At step two, the federal defendants assert <u>Bivens</u> should not be extended to Martin's claims because she could pursue alternative remedies, including under the FTCA and other administrative grievance procedures. <u>Id.</u> at 20-23. The Supreme Court held a court is not permitted to "fashion a <u>Bivens</u> remedy if Congress has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" <u>Egbert</u>, 596 U.S. at 493 (citation omitted). Even if a court concludes available administrative processes are inadequate, the court may not "second-guess" the sufficiency of those remedial structures by "superimposing a <u>Bivens</u> remedy."[10] <u>Id.</u> at 498. "That is true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" <u>Id.</u> (citation omitted). Here, the court need not reach the issue of whether the FTCA serves as an alternative remedy to <u>Bivens</u>

---

[9] This court recognizes the inherent unfairness of permitting excessive force claims that do not arise on tribal land to proceed while not permitting those that arise on tribal land to proceed. But this court is bound by recent Supreme Court precedent that severely limits recognition of <u>Bivens</u> claims. <u>See, e.g.</u>, <u>Abbasi</u>, 582 U.S. at 147 ("Yet even a modest extension is still an extension.").

[10] "[T]he focus is whether the Government has put in place safeguards to preven[t] constitutional violations from recurring. And, again, the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." <u>Egbert</u>, 596 U.S. at  498 (citation and internal quotation marks omitted).

because the federal defendants advance other potentially available alternative remedies,

which, under <u>Egbert</u>, are sufficient.[11]

The BIA is required to maintain a system for reporting allegations of officer

misconduct:

> The Director will develop and maintain a reporting system that allows any resident of or visitor to Indian country to report officer misconduct. Each law enforcement program in Indian country will maintain instructions on how to register a complaint. An overview of these steps must be posted for public viewing at each law enforcement facility in Indian country.

25 C.F.R. § 12.52. All complaints of officer misconduct are to be investigated:

> The Director, Office of Law Enforcement Services maintains an internal affairs program that investigates all allegations of misconduct by BIA officers, and any officer receiving funding and/or authority from the BIA. All allegations of misconduct must be thoroughly investigated and appropriate action taken when warranted. Any person having knowledge of officer misconduct must report that information to the officer's supervisor. The supervisor must immediately report allegations to the internal affairs unit. Depending upon the severity of the allegation, the matter may be dealt with locally or it will be investigated by the internal affairs unit. Failure of any BIA employee to report known allegations may be considered misconduct in itself. Citizens may report officer misconduct directly to the internal affairs unit if that is more practical.

<u>Id.</u> § 12.53. Additionally, all alleged civil rights violations by BIA officers must be

reported to the Department of Justice:

> All allegations of civil rights violations must be reported immediately to the internal affairs unit. That office will ensure that allegations are immediately reported to the Civil Rights Division of the U.S. Department of Justice

---

[11] Courts in the Eighth Circuit disagree on whether the FTCA provides an adequate alternative remedy to a <u>Bivens</u> claim. <u>See Young v. City of Council Bluffs, Iowa</u>, 569 F.Supp.3d 885, 895 (S.D. Iowa 2021) (concluding that because FTCA claims are brought against the United States and not against individuals, the FTCA does not effectively deter individual officers from unconstitutional acts); <u>McKinney v. United States</u>, No. 17-cv-4156, 2021 WL 3856132, at *7 (D. Minn. Aug. 27, 2021) (stating "the FTCA provides a potential, alternative remedy for Plaintiffs and weighs against expansion of a <u>Bivens</u> remedy").

through established procedures. BIA's internal affairs unit may also investigate the matter and make recommendations for additional action as necessary.

Id. § 12.54. Under Egbert, the BIA's administrative complaint process is an available alternative remedy that precludes extending Bivens to Martin's claims against BIA officers in their individual capacities.

Defendants also assert Martin has an alternative remedy against FBI agents under section 1001 of the USA Patriot Act. Section 1001 required the Inspector General of the Department of Justice to designate an official to "review information and receive complaints alleging abuses of civil rights and civil liberties by employees and officials of the Department of Justice." See Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot Act) Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001). Those requirements were initially codified in an appendix to the United States Code, 5 U.S.C. App. § 8E. Congress recently repealed that appendix, effective December 27, 2022. Pub. L. No. 117-286, § 7, 136 Stat. 436 (2022). Now, the Inspector General of the Department of Justice may investigate Department of Justice employees' alleged misconduct pursuant to 5 U.S.C. § 413. See Mays v. Yarbrough, Civ. No. 22-2403, 2024 WL 198996, at *4 (D. Minn. Jan. 18, 2024), appeal docketed, No. 24-1189 (8th Cir. Jan. 31, 2024); Oster v. Burnett, No. 8:23-cv-02401, 2024 WL 199520, at *1 (C.D. Cal. Jan. 18 2024). Any complaint of an FBI agent's misconduct, including an alleged violation of civil rights, may be reported online to the Office of the Inspector General. U.S. Dep't of Just. Off. of the Inspector Gen., https://oig.justice.gov/hotline/civil_rights_complaint (last visited Feb. 28, 2024). Under Egbert, Martin's option to report an FBI agent's alleged wrongdoing to the

Inspector General likely precludes extending <u>Bivens</u> to Martin's claims against FBI Agent Mesman in his individual capacity. Even if Martin's option to report the alleged wrongful conduct to the Office of the Inspector General, which "may" conduct an investigation, were deemed insufficient, other factors preclude extension of Martin's claims under <u>Bivens</u>.

The federal defendants contend "Supreme Court precedent has made clear that matters relating to tribal relations are within the province of the Legislature, or the Executive, not the courts." (Doc. 66, p. 16). They note Martin's claims involve two separate sovereigns—the United States and the Turtle Mountain Band of Chippewa. And they contend extending <u>Bivens</u> to claims on tribal lands would have systemwide consequences for the FBI and BIA in maintaining order on tribal lands. <u>Id.</u> at 19-20.

Before extending a damages remedy under <u>Bivens</u>, the court must consider "economic and governmental concerns," "administrative costs," and the "impact on governmental operations systemwide." <u>Egbert</u>, 596 U.S. at 491 (quoting <u>Abbasi</u>, 582 U.S. at 133-34, 146). That being said, <u>Egbert</u> cautioned, "Even in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under <u>Bivens</u>. That uncertainty alone is a special factor that forecloses relief." <u>Id.</u> at 493 (citation omitted). Considering the uncertainty of potential systemwide consequences and the potential impact on tribal sovereignty issues, the district judge should decline to extend <u>Bivens</u> to Martin's claims against the federal defendants in

their individual capacities and grant the motion to dismiss Martin's claims as to those defendants.[12]

### 3.    Individual Capacity Claims Against City and County Defendants

Defendants William Poitra (City of Rolla Chief of Police), Joseph Kaufman (City of Rolette Chief of Police), Nathan Gustafson (Rolette County Sheriff), Trenton Gunville, Mitchell Slater, and Andrew Saari, Jr., (Rolette County Sheriff's deputies), and Jayde Slater (City of Rolla police officer) (collectively, city and county defendants),[13] in their individual capacities, move to dismiss Martin's claims under Federal Rule of Civil Procedure 12(b)(6), asserting Martin has failed to state a plausible claim against any of them.

The city and county defendants answered Martin's complaint on March 23, 2023, (Doc. 48), and moved to dismiss under Rule 12(b)(6) on May 24, 2023, (Doc. 68). "[A] Rule 12(b)(6) motion cannot be filed after an answer has been submitted." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990); see also Fed. R. Civ. P. 12(b) (stating a motion asserting any Rule 12(b) defenses, including failure to state a claim, "must be made before pleading if a responsive pleading is allowed") (emphasis added).

---

[12] Because this court recommends the district judge conclude Bivens does not extend to Martin's claims, this court also recommends the district judge not consider any alleged Bivens claim on the merits, including whether any federal defendant, in an individual capacity, would be entitled to qualified immunity. Martin may pursue her claims of each federal defendant's wrongdoing through the BIA's administrative complaint process, through the Inspector General of the Department of Justice's online complaint process, or through any available tribal court remedies.

[13] The city and county defendants did not identify their employers in either their answer or their motion to dismiss. While Martin identified all of them as employed by Rolette County, it appears each was employed by either the City of Rolla, the City of Rolette, or Rolette County. (Doc. 8; Doc. 65).

However, Rule 12(h)(2) permits a defendant to assert that a plaintiff failed to state a plausible claim in a motion under Rule 12(c). When a party files a Rule 12(b)(6) motion after it has answered, the court is to "treat the . . . motion as if it had been styled a 12(c) motion." <u>Westcott</u>, 901 F.2d at 1488. This court therefore considers the city and county defendant's motion under Rule 12(c). Of course, that distinction is merely formal since the same standards govern both 12(b)(6) and 12(c) motions. <u>Ginsburg v. InBev NV/SA</u>, 623 F.3d 1229, 1233 n.3 (8th Cir 2010).

Rule 12(c) allows for entry of judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." As noted above, in considering the city and county defendants' motion, the court views all facts Martin pleaded as true and construes all reasonable inferences in her favor. <u>See</u> <u>Bohan</u>, 366 F.3d at 608. And, in construing a pro se complaint, a court is to take a liberal approach and is to hold a pro se litigant to a less stringent pleading standard than would be required of attorneys. <u>Erickson</u>, 551 U.S. at 93. The court is to grant a motion under Rule 12(c) only if there are no disputed material facts and the moving party is entitled to judgment as a matter of law. <u>Id.</u>; <u>Ashokkumar v. Elbaum</u>, 932 F. Supp. 2d 996, 1006 (D. Neb. 2013).

The city and county defendants assert Martin fails to state a plausible claim against them because she improperly makes allegations against defendants as a group without specifying her claims against each defendant or specifying what each defendant is alleged to have done or failed to do that caused a deprivation of constitutional rights.[14]

---

[14] The city and county defendants quote a term used in <u>Weiland v. Palm Beach County Sheriff's Office</u>, 792 F.3d 1313 (11th Cir. 2015), to describe Martin's pleadings. Given the circumstances of Martin's allegations, the court considers the city and county defendants' adoption of that term inappropriate.

(Doc. 71, pp. 4-5). They contend Martin's complaint fails to provide fair notice of the claims and the grounds upon which each claim rests. Id. at 6.

In her response, Martin states her son was killed by BIA officers, "with assistance from the Rolette County Sheriff's Department." (Doc. 76, p. 1). She asserts the city and county defendants "did not have probable cause to be at the Richard Laducer residence and did not obtain [a] proper warrant or permission to be at the Richard Laducer Homestead." Id. at 3. And she states the "Rolette County Sheriff's office failed to fully investigate the circumstances in Bottineau County before calling for assistance." Id.

Martin asserts her claims against the city and county defendants under 42 U.S.C. § 1983. To adequately state a claim under § 1983, a plaintiff must allege (1) a person acting under color of state law (2) deprived the plaintiff of rights secured by the Constitution or laws of the United States. A plaintiff must allege each defendant, through their own actions, violated the Constitution. Reynolds v. Dormire, 636 F.3d 976, 979 (8th Cir. 2011) (citing Iqbal, 556 U.S. at 676); see also Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014); Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999) (stating a plaintiff must allege facts showing each defendant's personal involvement in the alleged constitutional violation); Bruton v. City of Grand Forks, No. 3:2-cv-135, 2023 WL 3294368, at *3 (D.N.D. May 5, 2023) (noting a defendant "may be liable only for his or her own [actions]") (quoting Torres v. City of St. Louis, 39 F.4th 494, 504 (8th Cir. 2022)).

As the city and county defendants contend, Martin's complaint does not allege what each city and county defendant personally did, or did not do, that caused a violation of her son's constitutional rights. Instead, Martin makes an allegation against

24

defendants as a group—she alleges BIA and Rolette County officers shot and killed her son, though she notes BIA Officer Parisien "delivered the deadly shot to [her son's] heart." (Doc. 1, p. 10). The complaint makes no specific factual allegations against any of the individual city and county defendants. In fact, other than naming each as a defendant, Martin's complaint does not mention any of the city or county defendants individually.

Courts have concluded that a plaintiff cannot make claims against defendants collectively but must instead allege specific facts showing each individual defendant's personal involvement or responsibility for the alleged constitutional violations.[15] Because Martin's complaint makes allegations against defendants collectively without

---

[15] See Brooks v. Lindlbauer, No. 22-cv-11, 2023 WL 2976384, at *5 (D. Minn. Mar. 24, 2023), report and recommendation adopted, 2023 WL 2976034 (D. Minn. Apr. 17, 2023) (concluding an allegation that certain defendants were merely present was insufficient to state a plausible claim against those defendants and dismissing the plaintiff's claims as to them because the plaintiff did not "allege any specific factual allegations against [those defendants]"); Murray v. Cnty. of Hudson, Civ. No. 17-2875, 2018 WL 3000333, at *4 (D.N.J. June 15, 2018) (noting "when defendants are grouped together, a court cannot determine whether a complaint has set forth plausible allegations as to each particular defendant"); Rendon v. Cnty. of Orange, No. 8:18-cv-01835, 2020 WL 974940, at *3 (C.D. Cal. Jan. 3, 2020) (citation omitted) (stating "a complaint 'must identify what action each Defendant took that caused [the plaintiff's] harm, without resort to generalized allegations against Defendants as a whole'"); Keil v. Triveline, No. 09-3417-CV, 2010 WL 3724535, at *1 (W.D. Mo. Sept. 15, 2010) (quoting Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that "in § 1983 actions, where plaintiffs most often assert claims against several defendants, the complaint must 'make clear exactly who is alleged to have done what to whom' and "allegations against 'Defendants' collectively [are] insufficient"); Strutton v. Adams, No. 4:05-cv-502, 2005 WL 1690547, at *2 (E.D. Mo. July 18, 2005) (holding the plaintiff did not state a claim against any individual defendant because the plaintiff "lodged his complaint against defendants collectively as 'the treatment team,' the plaintiff "made no specific factual allegation as to any individual defendant," and the plaintiff "made no assertion that any individual defendant was personally involved in or directly responsible for the incidents that injured him").

alleging what each defendant did, or did not do, that caused a violation of constitutional rights, she has not stated a plausible claim against any city or county defendant in an individual capacity. The city and county defendants' motion to dismiss the individual capacity claims against them should therefore be granted.[16]

## 4.    Official Capacity Claims Against City and County Defendants

The city and county defendants, in their official capacities, assert entitlement to immunity under the Eleventh Amendment. (Doc. 71, p. 2). States, state agencies, and state employees in their official capacities are immune from suits for money damages under the Eleventh Amendment absent a waiver of that immunity. See, e.g., Will v.

---

[16] Qualified immunity is analyzed under a two-prong test. Qualified immunity shields a government official from liability unless (1) the official's conduct violated a statutory or constitutional right and (2) the right was "clearly established" at the time of the conduct at issue. Ashcroft v. al-Kidd, 531 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Since both prongs must be present to defeat a defendant's assertion of qualified immunity, "the Court has discretion to not address both prongs" if one prong demonstrates the defendant's entitlement to qualified immunity. Ward v. City of Minneapolis, Civ. No. 11-1752, 2013 WL 3871429, at *3 (D. Minn. July 26, 2013) (citing Pearson v. Callahan, 555 U.S. 223, 236-37 (2000)) (emphasis added). Because Martin failed to state a plausible claim against any city or county defendant individually, each is entitled to qualified immunity, and consideration of whether any constitutional right was clearly established at the time of the incident is not necessary.

This court recognizes the federal defendants submitted the NDBCI report Martin referenced along with their motion to dismiss, (Doc. 65; Doc. 66-1), and argued Martin's complaint embraced that report, (Doc. 66, p. 9 n.1). And both the federal defendants and the state and county defendants relied on the NDBCI report to support their arguments that they did not violate any clearly established right. While the NDBCI report is arguably embraced by the complaint, consideration of the NDBCI report is not necessary for determination of the pending motions. Because Martin may pursue her claims of each federal defendant's wrongdoing through the BIA's administrative complaint process or through the Inspector General of the Department of Justice's online complaint process and because she may pursue any available tribal court remedies, this court recommends not considering any document, including the NDBCI Report, which Martin did not submit.

Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Doe v. Nebraska, 345 F.3d 593, 597

(8th Cir. 2003); Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995). But

the city and county defendants are not entitled to Eleventh Amendment immunity

because they are local government or municipal employees rather than state employees.

Section 1983 suits against local government employees in their official capacities are

actually suits against the entity of which the employees are agents. Monell v. Dep't of

Soc. Serv., 436 U.S. 658, 690 n.55 (1978); see also Slaughter v. Lawrenz, No. 16-cv-1234,

2017 WL 4862764, at *5 (D. Minn. Oct. 26, 2017) (noting official capacity claims against

a public employee are actually claims against the public employer). Martin's claims are

therefore construed as against the city or county that employed each of the city and

county defendants. A city or county may be held liable under § 1983 for a constitutional

violation only if the violation resulted from (1) an official policy, (2) an unofficial

custom, or (3) a deliberately indifferent failure to train or supervise. Leftwich ex rel.

Leftwich v. Cnty. of Dakota, 9 F.4th 966, 972 (8th Cir. 2021); Corwin v. City of

Independence, Mo., 829 F.3d 695, 699 (8th Cir. 2016).

  While the city and county defendants allege Martin failed to state a claim against

them in in their official capacities, they base their argument on Eleventh Amendment

immunity and not on whether the municipality that employs each defendant may be

liable. But "in order for municipal liability to attach, individual liability first must be

found on an underlying substantive claim." McCoy v. City of Monticello, 411 F.3d 920,

922 (8th Cir. 2005). Since Martin has not stated a plausible underlying substantive

claim against any of the city and county defendants, the municipalities that employ each

of those defendants cannot be held liable. Thus, this court recommends granting the city

and county defendants' motion to dismiss the official capacity claims against them because no municipal liability may attach under the facts Martin alleged.

**5.    Claims Against Annette Laducer**

The docket shows Martin served Annette Laducer with a copy of the summons and complaint on March 2, 2023, but Laducer has not appeared in this action. (Doc. 39). Notably, while Martin's complaint alleges claims only under <u>Bivens</u> and § 1983,[17] there is no allegation that Annette Laducer, a private citizen, acted under color of either federal law or state law. In fact, Martin describes Laducer's job or title as "homeowner" and states Laducer lives in Belcourt, North Dakota. (Doc. 1, p. 8). Martin's complaint identifies herself, like Laducer, as a resident of North Dakota. <u>Id.</u> at 2.

Under Federal Rule of Civil Procedure 12(h)(3), the court must dismiss an action if the court lacks subject matter jurisdiction over the action.[18] Federal courts, unlike most state courts, have limited jurisdiction, and the party asserting federal court jurisdiction bears the burden of establishing the federal court's subject matter jurisdiction. <u>Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.</u>, 551 F.3d 812, 816 (8th Cir. 2009). While Martin's complaint alleges jurisdiction under <u>Bivens</u> and § 1983, <u>Bivens</u> and § 1983 permit claims only against federal or state actors, not against private citizens. Since Martin's complaint identifies her and Laducer as residents of North Dakota, this court would not have diversity jurisdiction over any state

---

[17] As discussed above, Martin's complaint could also be liberally construed as brought against the United States under the FTCA.

[18] Jurisdiction refers to a court's authority to hear the claims in a case and to make decisions about a case.

law claims that might be construed from a liberal reading of the complaint. Because this court does not have subject matter jurisdiction over Martin's claims against Laducer, this court recommends that any claims against Laducer be dismissed.

## Recommendation

For the reasons discussed above, this court **RECOMMENDS** the United States and the federal defendants' motion to dismiss, (Doc. 58), the claims against the United States and the official capacity claims against the federal defendants be **GRANTED**, the federal defendants' motion to dismiss, (Doc. 63), the individual capacity claims be **GRANTED**, the city and county defendants' motion to dismiss,  (Doc. 68), be **GRANTED**, the claims against Annette Laducer be **DIMISSED**, and the complaint, (Doc. 1), be **DISMISSED**. This court further **RECOMMENDS** the district judge conclude an appeal would <u>not</u> be frivolous as to Martin's <u>Bivens</u> claims against the federal defendants in their individual capacities, permitting Martin to take an appeal in forma pauperis.[19]

Dated this 28th day of February, 2024.

/s/ Alice R. Senechal
Alice R. Senechal
United States Magistrate Judge

---

[19] Though Martin did not initially request in forma pauperis (IFP) status, after she paid the filing fee, she requested that she be permitted to proceed IFP. Because she paid the filing fee, this court found that motion moot. (Doc. 6). But had she not paid the filing fee before moving to proceed IFP, this court would have concluded she qualified to proceed IFP. Thus, this court included a recommendation regarding Martin being permitted to proceed IFP on appeal regarding her <u>Bivens</u> claim should she make a request to do so.

**NOTICE OF RIGHT TO OBJECT**[20]

Any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **March 13, 2024**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals. Any responses to objections are due **March 20, 2024**.

---

[20] <u>See</u> Fed. R. Civ. P. 72(b); D.N.D. Civ. L.R. 72.1.